UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| LISA BIRON | ) |
| | ) |
| V. | ) Case No. 1:16-CV-0108-PB |
| | ) |
| UNITED STATES OF AMERIA | ) |
| | ) |

**DEFENDANT'S REPLY TO UNITED STATES' RESPONSE
TO DEFENDANT'S 28 U.S.C. § 2255 MOTION**

NOW COMES the Defendant/Petitioner, Lisa Biron, by and through her counsel, Wilson, Bush, Durkin & Keefe, P.C. ("the Defendant"), and hereby respectfully submits this reply to the Government's response to the Defendant's 18 U.S.C. 2255 motion. In support thereof, the Defendant states as follows:

1. The government in its response offers that the Defendant requested a stay to review discovery and conduct an investigation into the matter.

2. The government further offers that the Defendant presented no new evidence after this stay.

3. The Defendant retained an investigator after receiving the discovery materials from the government. That investigator met extensively with undersigned counsel both before and after reviewing the discovery materials in this case. That investigator then sought to locate and interview not only the witnesses called by the government at trial, but other witnesses that may provide relevant and possibly exculpatory information.

1

4. As the Court may recall, one of the government's witnesses was Kevin Watson, a young man from Canada. The investigator attempted to contact Mr. Watson several times, but he refused to speak with the investigator.

5. The Defendant's investigator also contacted Brandon Ore, the young man who lived with the Defendant for a time and ultimately reported this matter to law enforcement. Mr. Ore provided a brief interview, but due to the passage of time and a lack of desire to recall the subject events, provided limited information in a somewhat hostile manner.

6. Finally, another key witness for the government was a man named Rob Hardy, a self-described gang member. At the time of the trial, Mr. Hardy was homeless. The Defendant's investigator spent many hours attempting to locate Mr. Hardy, through various investigative means, but he was unable to do so.

7. Although the government's response may be taken to mean that the Defendant did no such investigation during the stay of this matter, that is not the case. Further, the results of the Defendant's investigation at this point further demonstrate the ineffective assistance of counsel argued in her original petition.

8. Under *Strickland,* this Court must first determine whether trial counsel's performance fell below an "objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691. The Ninth Circuit Court of Appeals has (as recognized in a decision issued by the First Circuit Court of Appeals, *Horton v. Allen*, 370 F.3d 75, 87 (1st Cir. 2004)) held that "a lawyer who fails adequately to investigate, and to introduce into evidence, evidence that demonstrates his client's factual innocence, or that raises sufficient doubt as to that question to undermine confidence in the

verdict, renders deficient performance." Avila v. Galaza, 297 F.3d 911, 919 (9th Cir. 2002) (quoting Hart v. Gomez, 174 F.3d 1067, 1070 (9th Cir. 1999)); see also Lord v. Wood, 184 F.3d 1083, 1096 (9th Cir. 1999) (counsel's performance was deficient where counsel failed to interview three witnesses who had material evidence as to their client's innocence).  Of course, counsel need not interview every possible witness to have performed proficiently. LaGrand v. Stewart, 133 F.3d 1253, 1274 (9th Cir. 1998) (concluding there was no prejudice where trial counsel had personally interviewed the one eyewitness and read investigative reports and transcripts of interviews with all other witnesses).  "However, where (as here) a lawyer does not put a witness on the stand, his decision will be entitled to less deference than if he interviews the witness.  The reason for this is simple: A lawyer who interviews the witness can rely on his assessment of their articulateness and demeanor - factors we are not in a position to second-guess." Lord, 184 F.3d at 1095 n. 8 (parenthetical in original).

9. As well, the Defendant reiterates here the teachings of *Dugas v. Coplan*, 428 F.3d 317 (1st Cir. 2005).  The Court there noted that although trial counsel was experienced, the relevant inquiry is whether trial counsel's performance, given the particular facts of the case, fell below the constitutional standard of competence by inadequately investigating a defense that he used in his overall strategy. Dugas, 428 F.3d 328.  The question remains whether trial counsel's investigation of his purported defense was reasonable. Id. (citing Wiggins v. Smith, 539 U.S. 510, 523 (2003)).  What is different here, and more aggravating to the Defendant's cause as compared to *Dugas*, is the hurried manner in which trial counsel proceeded to trial such that he was incredibly rushed to prepare a defense in this matter in addition to failing to investigate anything.  That is emphatically compounded here now that

witnesses are refusing to talk to the Defendant's investigator, are unable to be located, are claiming a lack of memory of the relevant events.

10. In *Dugas*, the Court noted that trial counsel's investigation amounted to looking at the state's evidence and speaking with other defense counsel. The Court found that trial counsel there "abandoned his investigation … after having acquired only a rudimentary knowledge of the issues from a narrow set of sources." Id. The same is true here. Although reasonably diligent counsel may draw a line where they have good reason to think further investigation would be a waste, counsel's failure to investigate material he knew that the prosecution would rely on was ineffective. Rompilla v. Beard, 545 U.S. 374 (2005). Counsel's base of knowledge came from the government's discovery and his client. He did nothing to follow up on anything in the government's discovery, nor did he conduct any investigation based upon his consultations with the Defendant. Importantly, the opportunity to do all of that investigation has now passed as demonstrated by the Defendant's investigator's inability to adequately investigate this case. An investigation that was ripe and available at the time of the trial.

11. The Defendant as well reiterates the First Circuit's reasons why trial counsel's failure to thoroughly investigate his defense was constitutionally deficient. Those reasons equally apply here, and are emphasized due to the prejudicial passage of time and no trial pending. First, the Court there found that challenging the state's case was critical to his defense, and other than creating reasonable doubt that the fire was not arson, the defendant's only other defense (that someone else did it) is a difficult one to proffer. Id. at 329. Here, the same holds true. Challenging the government's case, specifically Kevin Watson and Brandon Ore, was critical to the Defendant's case. Both witnesses changed their statements

4

in the days and weeks leading up to the trial. As well, the Defendant's only other defense - the government failed to meet its burden of proof - was an incredibly difficult one to offer due to the horrific nature of the evidence in this case. Much of trial counsel's defense depended on his ability to show the jury that the Defendant did not have any intent to make a pornographic video involving her daughter when she went to Canada, and that she did not in any way cause the victim to engage in sexual acts for the purpose of recording them. Watson and Ore were the central witnesses in support of this evidence, and tangential witnesses included Hardy and Brien. Trial counsel investigated none of them, nor did he attempt to interview any of them or anyone else who could have potentially had relevant information. The Defendant cannot now do so for the reasons stated.

12. Another reason offered by the First Circuit was that trial counsel had at least some reason to believe that there were problems with the state's case. Id. "In assessing the reasonableness of an attorney's investigation … a court must consider … whether the known evidence would lead a reasonable attorney to investigate further…. Strickland does not establish that a cursory investigation automatically justifies a tactical decision…." Id. (quoting Wiggins, 539 U.S. at 527). Here, the government's intent and cause evidence offered through Watson and Ore was specious in that each changed their statements in the weeks prior to trial and only after being specifically asked by the federal prosecutors, prosecutors they had to keep happy. Further investigation into them was more than warranted. Again, that window has now closed due to the passage of time.

13. Taken together, these circumstances demonstrate the inescapable need for an investigation into the government's witnesses as well as possibly other witnesses who may have been able to offer contrary evidence at the time the case was pending. This Court

cannot conclude that rushing into such a significant trial without investigating key government witnesses or conducting his own independent investigation could be justified by any reasonable or rational tactical decision. "A tactical decision to pursue one defense does not excuse failure to present another defense that 'would bolster rather than detract from the primary defense.'" Id. at 331 (quoting Foster, 9 F.3d at 726). Relying solely upon cross-examination is sufficient only where the state's case is so weak that it can be "demolished on cross-examination," or where the defense has built a cross-examination upon its own investigation. Id. (citing Ruiz v. United States, 221 F.Supp.2d 66, 82 (D. Mass. 2002); Miller, 255 F.3d at 459). Neither situation was present here. As such relying solely upon cross-examination without any investigation was constitutionally deficient.

14. These failures by trial counsel prejudiced the Defendant because there is a reasonable probability that, but for counsel's errors, the results of the proceeding would have been different. In this regard, "*Strickland* clearly allows the court to consider the cumulative effect of counsel's errors in determining whether a defendant was prejudiced." When a case is close, and would not have taken much to sway at least some jurors toward acquittal, like the case, the threshold for prejudice is comparatively low because less would be needed to unsettle a rational jury. Dugas, 428 F.3d at 336 (citing Strickland, 466 U.S. at 696). Present counsel, along with the Defendant's investigator, are now handicapped in their investigation because the trial-critical witnesses are no longer available, or they are under no legal compulsion to speak with a defense investigator. Accordingly, the Defendant's inability to present additional evidence after her investigation should not be held against her, but the Court should use it as further evidence of further prejudice to the Defendant from trial counsel's ineffective assistance.

WHEREFORE, the Defendant, Lisa Biron, respectfully requests that this Honorable Court:

A.    Vacate the Defendant's sentence and order that she have a new trial; and

B.    Grant such other and further relief as justice requires.

Respectfully submitted,

Lisa Biron
By and through her counsel,

May 9, 2017    /s/Charles J. Keefe
Charles J. Keefe (N.H. Bar No. 14209)
Wilson, Bush, Durkin & Keefe, P.C.
184 Main Street, Suite 222
Nashua, NH 03060
(603) 595-0007
keefe@wbdklaw.com

**Certificate of Service**

I, Charles J. Keefe, hereby certify that on May 9, 2017, true copies of the above document were hand delivered to AUSA Seth Aframe of the United States Attorney's Office for the District of New Hampshire.

/s/Charles J. Keefe
Charles J. Keefe