UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

FILED
2018 JUL -2 A 10: 41

United States of America )
)
v. ) Case nos. 12-CR-140-PB
) 16-CV-108-PB
Lisa Biron )
)

## Motion for Relief from Judgment Under Rule 60(b)

Ms. Biron brings this motion under Rule 60(b)(2) and — or in the alternative — Rule 60(b)(6) because new evidence has come to light and exceptional circumstances exist that warrant relief from this Court's denial of Ms. Biron's motion for a judgment of acquittal ("MJA"), and from the denial of her motion under 28 U.S.C. § 2255.[1] Specifically, a previously latent, yet fundamental, error of law has been exposed in the Court's Order of October 2, 2017 ("October Order") that undermines the integrity of the ruling on the MJA, the October Order, and the outcome of the trial in general.

In the October Order, which denied the § 2255 motion, the Court stated that "Count One was [Ms.] Biron's _only_ crime of specific intent[, and her] seven[2] other crimes were general intent crimes." (Oct. Order at 14 & 14 n.7)(emphasis added). In fact, Counts 2 through 7 (18 U.S.C. § 2251(a)) are also specific intent crimes that require the highest level of mens rea and, at a minimum, "but for" causation to convict. This mis-

---

[1] The Court's familiarity with the facts of this case as stated in its October Order is presumed.
[2] Count Eight (possession of child pornography) is a general intent crime — the only general intent crime of the eight (8) counts.

1

statement of the law has revealed that the District Court based its analysis of the MJA, the § 2255 motion, and the trial proceedings on its misapprehension of an essential element of the crime — the specific intent necessary to convict.

## Relief from Judgment Under Rule 60(b)

"A movant seeking relief from a judgment under [Fed. R. Civ. P.] 60(b) must make a threshold showing of timeliness, a meritorious claim or defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances." Danielson v. Human, no. 16-2125, 2017 U.S. App. LEXIS 2429, at * 1 (4th Cir. Feb. 10, 2017)(citation omitted); Bouret-Echevarria v. Caribbean Aviation Maint. Corp., 784 F.3d 37, 46 (1st Cir. 2015). A party "must give the trial court reason to believe that vacating the judgment will not be an empty exercise. . . . [M]otions for relief under Rule 60(b) are not to be granted unless the movant can demonstrate a meritorious claim or defense." Bouret-Echevarria, 784 F.3d at 46. A motion under Rule 60(b) is cognizable "where the movant shows a manifest error of law or newly discovered evidence. Likewise, [the] motion . . . should be granted if the court has . . . made an error not of reasoning but of apprehension." Ruiz Rivera v. W. Pfizer Pharms, 521 F.3d 76, 81-82 (1st Cir. 2008).

## Rule 60(b)(2) New Evidence

A motion seeking relief under Rule 60(b)(2) based on new evidence must be filed "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). The October 2017 denial of Ms. Biron's motion under § 2255 is within the one-

year limitation, and is, therefore, timely. Alternatively, this judgment may be reopened under Rule 60(b)(6).

### Rule 60(b)(6)

A motion seeking relief under Fed. R. Civ. P. 60(b)(6) permits a court to reopen a judgment for "any other reason that justifies relief."

> Rule 60(b) vests wide discretion in courts but
> . . . relief under Rule 60(b)(6) is available
> only in "extraordinary circumstances." In determining whether extraordinary circumstances are
> present, a court may consider a wide range of
> factors. These may include, in an appropriate
> case, "the risk of injustice to the parties"
> and "the risk of undermining the public's confidence in the judicial process."

Buck v. Davis, 137 S. Ct. 759, 777-78 (2017)(citations omitted). The structural error in Ms. Biron's trial and the MJA are timely challenged as the extraordinary injustice came to light in the October 2017 Order.

The Fifth Circuit has noted "that it is appropriate to consider and accept contentions not raised at any point during the trial proceeding where there is only a question of law involved and 'a refusal to consider it would result in a miscarriage of justice'." Federal Deposit Ins. Corp. v. Castle, 781 F.2d 1101, 1105 (5th Cir. 1986)(quoting Martinez v. Mathews, 544 F.2d 1233, 1237 (5th Cir. 1976). "The court has a duty to conform its judgment to the law as enacted by Congress." Federal Deposit Ins. Corp., 781 F.2d at 1105. Although a motion under Rule 60(b) "is not a substitute for an appeal[,]" relief from judgment is available if the movant can demonstrate that "'extraordinary circumstances' prevented a timely appeal." Mitchell v. Hobbs, 951 F.2d 417, 420 (1st Cir. 1991).

For the reasons that follow, Ms. Biron's motion under Rule 60(b) is

3

appropriate and relief is necessary as extraordinary circumstances exist. To wit: A conviction without proof of the specific intent scienter element required under § 2251(a) has resulted in a complete miscarriage of justice that undermines confidence in the judicial process. The matter was not raised sooner because it was not apparent until the October Order that the Court did not understand the statute and was, thus, misapplying the law. This is "an error not of reason but of apprehension." See Ruiz Rivera, 521 F.3d at 82.

## Counts 2, 3, 4, 5, 6, & 7 Require Proof of Specific Intent

"As with any question of statutory interpretation, [the Court's] analysis begins with the plain language of the statute." Jimenez v. Quarterman, 555 U.S. 113, 118 (2009). It is presumed that the "legislature says in a statute what it means and means in a statute what it says there." Dodd v. United States, 545 U.S. 353, 357 (2005).

In the present case, the text of the statute upon which Counts 2 through 7 are based is unambiguous. To convict Ms. Biron under 18 U.S.C. § 2251(a), the government must prove, beyond a reasonable doubt, that she "employ[ed], use[d], pursuade[d], induce[d], entice[d], or coerce[d] the minor [R.B.] to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . ." 18 U.S.C. § 2251(a). Clearly, a statute that requires a defendant to cause a minor to engage in certain behavior for the purpose of filming it, requires the highest level of scienter — purposeful intent — and, at a minimum, "but for" causation.

The Fourth Circuit explained: "As the text indicates, § 2251(a) contains a specific intent element: the government must prove that pro-

4

duction of a visual depiction was a purpose of engaging the [minor] in the sexually explicit conduct." United States v. Battle, 695 Fed. Appx' 677, 679 (4th Cir. 2017)(citing United States v. Palomino-Coronado, 805 F.3d 127, 130 (4th Cir. 2015). "It is simply not enough to say 'the photo speaks for itself and for the defendant and that is the end of the matter'." Id. (quoting United States v. Crandon, 173 F.3d 122, 129 (3d Cir. 1999)(discussing the "purpose" requirement in the related cross-reference under U.S.S.G. § 2G2.2(c)(1)). "That is, a defendant must engage in[, or engage the minor in,] the sexual activity with the specific intent to produce a visual depiction. It is not sufficient simply to prove that the defendant purposefully took a picture." Palomino-Coronado, 805 F.3d at 131. "It is also necessary for the prosecution to establish that the defendant caused the minor to engage in [the sexually explicit] conduct." United States v. Gonyer, 761 F.3d 157, 167 (1st Cir. 2014). "The acts with which the defendant caused the minor to engage in sexually explicit conduct — whether they consist of persuation, inducement, enticement, coercion, or some other thing — are as integral a part of the offense as the conduct itself. . . ." Id.

The Merriam Webster Dictionary defines "engage" as "cause to participate." (1997). The Supreme Court has explained that phrases such as "results from", "because of", and "by reason of", import "but for" causation. See United States v. Burrage, 134 S. Ct. 881, 888 (2014). "For the purpose of" is such a phrase.

In interpreting other statutes that contain the phrase "for the purpose of", the First Circuit has explained that these words "were included in the statute to define the quality of the required intent . . ."

United States v. Sheehy, 541 F.2d 123, 127 (1st Cir. 1976)(quoting United States v. Niro, 338 F.2d 439, 441 (2d Cir. 1964); see also United States v. Hibbs, 356 F. Supp. 820, 823 (E.D. Pa. 1973)(The crimes set forth in 18 U.S.C. § 1010 clearly require "proof of more than a general mens rea. The words . . . 'for the purpose of' . . . are descriptive of that specific mens rea . . .").

In Palomino-Coronado, the defendant was convicted of violating 18 U.S.C. § 2251(a) for taking a photo of himself penetrating a minor (a 7 year-old girl). The evidence showed that he had engaged in sexual activity with the minor victim on more than one occasion, that he had taken several non-sexually explicit photos of her, and that he had taken the sexually explicit photo and later deleted it. Id. at 132. The court held that there was no evidence to "support the conclusion that Palomino-Coronado engaged in the sexual activity with [the victim] for the purpose of producing a picture." Id. The court stated that the "photo is not evidence that Palomino-Coronado engaged in the sexual activity with [the victim] to take a picture, only that he engaged in the sexual activity with [the victim] and took a picture." Id. (citing Crandon, 173 F.3d at 130)(court acknowledging that taking a photo to memorialize time together or to memorialize love is taking the photo for "a purpose other than producing sexually explicit material"). The government contended that Palomino-Coronado's practice of frequently taking photos of all aspects of his life and the fact that the photo at issue focused on his genital area as he engaged in sexual activity with the victim demonstrated that the photo was taken on purpose. Palomino-Coronado, 805 F. 3d at 133.

Rejecting this interpretation of purpose, the court reasoned, "But

6

the government does little to explain . . . that Palomino-Coronado initiated the sexual activity with [the victim] for the purpose of producing the picture. Instead, the government appears to conflate the voluntary act of taking the picture with the specific intent required under the statute." Id. The court, therefore, held that the government's evidence was insufficient to prove that the defendant acted for the purpose of producing a visual depiction and vacated the conviction. Id.

### The Evidence in the Present Case

In the instant case, the relevant evidence is summarized as follows. As to Counts 2 through 5 (the 3 video clips and photo of R.B. and Kevin Watson in Canada), there is no proof (certainly no proof beyond a reasonable doubt) that the defendant caused the sexually explicit conduct for the purpose of filming it.

Specifically, Watson testified that there was no discussion about setting up cameras to make a video. He testified that he was already in the process of having sex with R.B. and then Ms. Biron picked up the camera and took the videos. (Tr. Trans. Day 2, at 114). He further testified that Ms. Biron did nothing to make or cause R.B. to have sex, (id. at 92), and that he and R.B. had planned to have sex as they had been having sex over Skype for months before meeting in person. (Id. at 90-97). Watson stated, "[T]he plan was for Lisa and R.B. to kind of have sex with me, that's their plan[,]" (id. at 95), which is why he met with them. (Id. at 96).

Regarding the still photo of Watson holding his exposed penis, Watson testified that Ms. Biron set up the camera timer to take the picture of the three of them. (Id. at 83-84). Further, Watson testified that there

7

were several other times when Watson and R.B. had sex that were not filmed. (Id. at 81).

Government witness Rob Hardy, likewise, provided no evidence that proved Ms. Biron caused R.B. to engage in sexually explicit activity for the purpose of creating an image of it. Hardy testified that R.B. told him that "she [(R.B.)] went to Canada and she [(R.B.)] lost her virginity and that Lisa recorded it." (Id. at 200-01). He also testified that Ms. Biron told him that they went to Canada for R.B. to lose her virginity and she (Ms. Biron) recorded it. (Id.).

Government witness Lisa Brien testified that R.B. wanted a video made of her first sexual experience for a "keepsake." (Id. at 208).

Government witness Brandon Ore testified that R.B. and Ms. Biron told him that "they had been drinking one night and had been intoxicated and planned to go up there [(to Canada)]." (Id. at 142). Ore stated, "I do not know if there was a plan to make a video." (Id. at 159). "They had never said they wanted to produce a video." (Id.).

Regarding Count 6, (the video clip depicting Ore and R.B.), Ore testified that Ms. Biron had encouraged him to have sex with R.B. in the living room. (Id. at 131). On cross examination, however, Ore clarified that R.B. and he were boyfriend and girlfriend and R.B. had complained to Ms. Biron (R.B.'s mother) that Ore did not initiate sex with her and that R.B. always had to initiate it. It was in this context, because of this complaint by R.B., that Ms. Biron encouraged Ore to take the initiative. (Id. at 167). Ore also testified that Ms. Biron took pictures of everything. (Id. at 172). Likewise, government witness and case agent Gibley testified that he recovered from Ms. Biron's house

8

"a large number of pictures, a very large number of pictures." (Id. at 234). Ore explained that the banter that can be heard on the video clip was of a humorous nature. (Id. at 134-35).

Regarding Count 7 (the video of the two women), government witness Michael Biron identified Ms. Biron's and R.B.'s voices on the video, (id. at 242), and identified the living room in the video. (Id. at 253). Scientific evidence presented by the government showed that the video had been deleted from the original device and was automatically backed-up in a file with a 40-character hexadecimal name that was inaccessible until the FBI extracted it using a program called Backlight. (Id. at 22; 28-29).

The Evidence Does Not Support a Finding of Specific Intent

As the Court's October Order shows, the Court was not cognizant that § 2251(a) requires specific intent to convict. Instead it analysed the evidence through the lense of general intent. Under a proper review of the evidence, it is clear that the government failed to prove each of the elements of § 2251(a) — specifically, the specific intent element — beyond a reasonable doubt. Consequently, Ms. Biron's MJA was wrongly decided.

"In reviewing a motion for a judgment of acquittal, a court must consider the evidence 'in the light most favorable to the prosecution' and determine whether the 'body of proof, as a whole, has sufficient bite to ground a reasoned conclusion that the government proved each of the elements of the charged crime beyond a reasonable doubt'." United States v. Mendoza-Maisonet, no. 16-194, 2018 U.S. Dist. LEXIS 21986 (D.P.R. Feb. 9, 2018)(quoting United States v. Lara, 181 F.3d 183, 200 (1st Cir. 1999).

9

The evidence surrounding the video clips of Counts 2, 3, 4, and 6, as set forth supra, established that R.B. and Watson, and R.B. and Ore, were already engaged in sexually explicit activity on their own accord when Ms. Biron filmed it. Under the Court's errant premise that § 2251(a) requires only general intent and no causation, this alone is sufficient evidence for a conviction. But the statute requires proof of specific intent and "but for" causation, and Ms. Biron did not cause R.B. to engage in the activity or engage R.B. in the conduct for the purpose of producing an image.

The evidence surrounding the still picture in Count 5 proved even less. The evidence proved only that Ms. Biron set the camera to take a timed photo, which caused a photo to be taken. There was no evidence that that Ms. Biron directed Watson to expose himself, and no evidence that she was even aware that he was going to expose himself. Lisa Brien's testimony regarding the Canada images was that the purpose of taking the pictures/video clips was for a "keepsake" for R.B. and that R.B. had asked for this. There was no evidence as to when R.B. made this alleged request. R.B.'s intent, however, is not Ms. Biron's intent. Regardless, the intent to produce a "keepsake" is a purpose other than the purpose to produce a sexually explicit image. See Crandon, 173 F.3d at 130.

The evidence surrounding the video with R.B. and Ore showed that Ms. Biron was taking the video clip to be annoying or as a joke and not with the purpose to create a sexually explicit image. In sum, none of evidence regarding Counts 2 through 6 proved that Ms. Biron caused R.B. to engage in sexually explicit conduct for the purpose of producing a visual depiction of sexually explicit activity. Indeed, the evidence

showed that R.B. and Watson, and R.B. and Ore, had sex independently of the actions of Ms. Biron. Like the evidence in Palomino-Coronado, the evidence in the present case, at best, proved Ms. Biron knowingly and voluntarily took pictures of sexually explicit conduct, and that is not what § 2251(a) proscribes. See Palomino-Coronado, 805 F.3d at 133.

Likewise, when viewed under the correct standard of scienter, Count 7 (the video of the two females) has no evidentiary support to sustain a conviction under § 2251(a). There was no evidence regarding the defendant's intent to cause the sexually explicit activity for the purpose of filming it. The only testimony in regard to this video was by Michael Biron who identified the voices on the video as belonging to Ms. Biron and R.B., and identified the house where the video was taken; and scientific evidence that showed the video had been deleted. Like the Palomino-Coronado court held, "the photo [of the defendant and the minor engaged in sexual activity] is not evidence that Palomino-Coronado engaged in the sexual activity with [the minor] to take a picture, only that he engaged in sexual activity with [the minor] and took a picture." Palomino-Coronado, 805 F.3d at 132 (citing Crandon, 173 F.3d at 130). "It is simply not enough to say 'the [video] speaks for itself and for [Ms. Biron]' and that is the end of the matter." See id.

In sum, the evidentiary proof falls far short of the causation and specific intent required under 18 U.S.C. § 2251(a). And regardless, it is now apparent that the Court was not looking at any of the evidence presented during the trial under the correct standard of mens rea. This calls in to question the integrity of the entire proceeding. If the Court did not understand that specific intent and causation were requir-

11

ed to convict Ms. Biron, surely the jury did not have a clue. Now that the Court's error of law is manifest, and its misapprehension is clear, Ms. Biron's conviction cannot stand.

## Relief Under Rule 60(b) from the Judgment Denying the § 2255 Motion

In denying Ms. Biron's motion under 28 U.S.C. § 2255, the District Court found that trial counsel's failure to investigate or present any mental health evidence was not constitutionally deficient based on its erroneous apprehension, as explained supra, that the production of child pornography under 18 U.S.C. § 2251(a) is a general intent crime when it is a specific intent crime; and, based on the fact that the psychologist that evaluated Ms. Biron post-conviction did not diagnose her as legally insane when he was not asked to do so and was not qualified to make such a diagnosis.

### Rule 60(b) in Relation to Habeas Actions

The First Circuit has held that a Rule 60(b) motion should not be treated as a second or successive habeas petition if the motion does not directly attack the constitutionality of the underlying conviction and attacks only the manner in which the earlier habeas motion was decided. See Rodwell v. Pepe, 324 F.3d 66, 67 (1st Cir. 2003). A motion under Rule 60(b) is appropriate when the issue raised "requires no further factual development, and is clear from the face of [the] record." Federal Deposit Ins. Corp., 781 F.2d at 1105.

In the present case, Ms. Biron is not using this motion under Rule 60(b) as a substitute for an appeal as she has no right to appeal because the Court did not issue a certificate of appealability. Further, this motion is not a second or successive motion under § 2255 because it is

12

not directly attacking the conviction, but the errant manner in which the original § 2255 motion was decided. See Rodwell, 324 F.3d at 67.

### Diminished Capacity

In its October Order, the District Court found that evidence of Ms. Biron's mental status would not have changed the outcome of the trial based on its belief that 18 U.S.C. § 2251(a) is a general intent crime. As explained, supra, § 2251(a) requires proof of specific intent and causation to sustain a conviction. Thus, evidence of the defendant's diminished capacity by lay witnesses as well as expert witnesses was relevant and admissible to negate mens rea and would probably have changed the outcome of the trial.

In discussing the effect of the Insanity Defense Reform Act ("IDRA"), 18 U.S.C. § 17, on the presentation of mental health evidence, the Sixth Circuit explained that an insanity defense applies where the defendant's mental condition "completely absolves him of criminal responsibility regardless of whether or not guilt can be proven[,]" United States v. Kimes, 246 F.3d 800, 805 (6th Cir. 2001), whereas evidence of diminished capacity is used to show that the defendant's "mental condition is such that he or she cannot attain the culpable state of mind required by the definition of the crime." Id. at 806.

The First Circuit has noted that "[t]he reception of evidence of the defendant's abnormal mental condition, totally apart from the defense of insanity, is certainly appropriate whenever that evidence is relevant to the issue of whether he had the mental state which is a necessary element of the crime charged." United States v. Schneider, 111 F.3d 197,

13

201 (1st Cir. 1997). Likewise, the Sixth Circuit has stated that evidence of diminished capacity is permitted for the purpose of negating the mens rea element of a specific intent crime. Kimes, 246 F.3d at 806.

Thus, in the present case, expert witness testimony and lay witness observation testimony, if sought out and presented by defense counsel, could have raised a reasonable doubt to negate the specific intent mens rea element. In Hensley v. Roden, the defendant was charged with first degree murder. The defense presented multiple lay witnesses to testify to their observation of the defendant's mental state to show that Hensley was incapable of forming the required mental state. See Hensley v. Roden, 755 F.3d 724, 728 (1st Cir. 2014).

In Ms. Biron's case, there were multiple statements in the government's discovery that suggested that Ms. Biron was intoxicated much of the time. Evidence about her intoxication at the time each image was taken should have been investigated and presented by counsel as evidence of her diminished capacity.

In relation to the video (of the two females) in Count 7, R.B. told the case agent that "[Ms. Biron] was very drunk when it happened and that she passed out shortly after it was filmed." (R.B. Statement, 1/1/13, at 5). In regard to the events that transpired during this time period, R.B. stated that "she thought her mother became addicted to pain medication and that she had a, [sic] 'melt down', [sic] which started the entire process, [sic] 'of everything'." (Id. at 7)(incorrect comma usage in original). Yet, Ms. Biron's trial counsel did not interview R.B. or any witness to prepare for trial. And presently, as explained in her § 2255 motion, without the Court's subpoena power, several witnesses are now uncooperative
14

or missing. Clearly, this evidence would have been relevant and admissible to negate specific intent.

Likewise, there are several statements in Dr. Burns' evaluation report that suggest, at least, a mental state of diminished capacity. Specifically he opined:

> "[T]his is an anxious individual who is significantly depressed."
> "[She] lived for the moment"
> "[There occurred a] dramatic relapse into substance abuse"
> "[She was] overwhelmed"
> "[T]he stress became too much"
> "[All of this] contributed to a synergistic meltdown"
> "Ms. Biron ceased to function as an autonomous adult"
> "[She] gave up on being an adult and regressed"
> "The [MMPI-II] profile suggests evidence of confused and perhaps disordered thought"
> "[The] degree of impairment is fairly acute"

Because § 2251(a) requires specific intent and causation to convict, evidence of these conditions is relevant and admissible. A mental health expert could have explained to the jury a link or relationship between, for example, "disordered thought" or "regression to adolescence" and the ability to form the mens rea at issue in this case. See United States v. Brown, 326 F.3d 1143, 1146 (10th Cir. 2003).

The District Court stated that "The evidence presented against [Ms.] Biron at trial was overwhelming. The jury's verdict was quickly returned and her conviction is well supported by the record." (Oct. Order at 15). But the Court's failure to analyse Ms. Biron's claim of ineffective assistance of counsel under a correct understanding of the mens rea element belies the Court's conclusion. At best the evidence proved that Ms. Biron knowingly took pictures and videos of sexually explicit activity. And if that were what § 2251(a) proscribed, the evidence was, indeed, overwhelming. But this is not the crime Congress described in § 2251(a). The Court's failure to analyse Ms. Biron's claim of IAC correctly has resulted in the

15

wrongful denial of her § 2255 motion. Thus, relief from this judgment under Rule 60(b) is appropriate and warranted.

### The Insanity Defense

Wholly apart from the Court's error in apprehending the scienter element and its relation to diminished capacity is its error in discounting Ms. Biron's likelihood of successfully presenting an insanity defense.[3]

In summarily dismissing this claim, the Court noted that "Dr. Burns did not find that [Ms.] Biron suffered from any kind of psychological disorder that may have precluded her from being able to make rational and informed calculations." (Oct. Order at 12). The Court, however, misconstrues what trial counsel hired Dr. Burns to do. Dr. Burns was hired <u>post-conviction</u> "to try to understand why these events took place." Trial counsel was "not looking to justify but rather to understand." (Jan. 22, 2013, Engagement Letter to Burns). In his March 26, 2018 letter to Ms. Biron, Dr. Burns explained that "[he] did not offer a specific diagnosis" because "[he] was not hired for that purpose . . . [and he] did not see how speculating on a diagnosis was all that helpful and might even be something of a distraction." He stated that if he had been asked to investigate a mental health defense, "[he] would probably not have accepted the referral in that [he did] not feel qualified enough to undertake such a specific charge." (Burns Mar. 26, 2018 Letter to Ms. Biron).

Consequently, the Court's reliance on Dr. Burns' failure to diagnose

---

3 Title 18 U.S.C. § 17 provides, "It is an affirmative defense . . . that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality of the wrongfulness of his acts."

the defendant is misplaced. As it stands, the Court has found that Ms. Biron was not prejudiced by trial counsel's failure to investigate an insanity defense because trial counsel did not properly investigate an insanity defense.

## Conclusion

In sum, Ms. Biron's trial and habeas proceeding were fundamentally flawed by the Court's misapprehension of the law and the resulting misapplication of the law to the facts of her case. This flaw was not exposed until the Court issued its October 2017 Order. She stands convicted despite the failure of the proof on element of mens rea. These circumstances are extraordinary and her conviction should be vacated.

Respectfully submitted

6/28/2018
Date

*Lisa Biron*
Lisa Biron
Reg. # 12775-049
FCI Waseca
P.O. Box 1731
Waseca, MN 56093

## Certification

I hereby certify that a copy of this motion was mailed this date U.S. Firstclass postage prepaid to AUSA Seth Aframe.

*Lisa Biron*
Lisa Biron